UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATRIX HVAC , LLC | CIVIL ACTION |
| VERSUS | NO. 23-1669 |
| DAIKIN APPLIED AMERICAS, INC., ET AL | SECTION: "J"(4) |

### ORDER AND REASONS

Before the Court is a *Second Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint* **(Rec. Doc. 27)** filed by Defendant, Daikin North America, LLC, an opposition thereto (Rec. Doc. 28) filed by Plaintiff Matrix HVAC, LLC, and Defendant's reply (Rec. Doc. 31). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff, Matrix HVAC, LLC ("Matrix") provides HVAC goods and services. This case arises from Matrix's claim that its former employee, Annirudha Joshi, who eventually left Matrix to work for Defendant Daikin North America, LLC ("Daikin"), provided trade secrets and confidential information regarding a new Matrix product to Daikin. Matrix developed the product ("the Matrix Product") in 2019, integrating a Daikin condenser with hot gas heat coils. Matrix marketed the product to potential customers, including Daikin, by distributing brochures and giving demonstrations on the advantages and applications of the product. However, Matrix alleges that it withheld the confidential details and properties of the product.

1

In its original complaint, Matrix claimed four causes of action: (1) that the "concept, design, manufacture, and implementation" of the product are trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"); (2) that Daikin's alleged misappropriation violates the Louisiana Unfair Trade Practices Act ("LUPTA"); (3) that Daikin's product constitutes a wrongful taking and conversion actionable under Louisiana Civil Code article 2315; and (4) that Daikin has been unjustly enriched without cause at the expense and impoverishment of Matrix under Louisiana Civil Code article 2298. (Rec. Doc. 1, at 4-9). Daikin moved for dismissal for failure to state a claim, and on December 16, 2023, the Court granted the motion in part, dismissing Matrix's LUTSA claim, conversion claim, and unjust enrichment claim with prejudice. (Rec. Doc. 19). As to the LUTSA claim, the Court found that Matrix failed to allege it undertook specific measures to create a protectible trade secret. *Id.* The Court dismissed the LUTPA claim without prejudice and granted Matrix leave to amend the deficiencies in the LUTPA claim within 21 days. *Id.* The deficiencies included that Matrix failed to allege conduct by Daikin that would violate LUTPA or that it had an agreement with Daikin limiting the use or disclosure of information shared. *Id.*

On January 5, 2024, Matrix filed an Amended Complaint in an attempt to address the deficiencies of the allegations under LUTPA. (Rec. Doc. 20). Daikin filed a renewed motion to dismiss but argued for dismissal under LUTSA rather than LUTPA. (Rec. Doc. 21). Because Daikin did not raise an argument as to the amended LUTPA claim, the Court denied the motion as moot on February 23, 2024. (Rec. Doc.

2

25). Daikin filed the instant motion on March 1, 2024, arguing that the amended complaint fails to state a plausible LUTPA claim, so the Court should dismiss the remaining LUTPA claim with prejudice. (Rec. Doc. 27-1, at 2). Specifically, Daikin contends that Matrix still fails to allege an agreement between the parties limiting the use or disclosure of information shared with Daikin, and instead, the Amended Complaint focuses on Mr. Joshi's alleged duty of loyalty to protect confidentiality. *Id.* at 3-4.

In the Amended Complaint, Matrix alleges that all employees, including Mr. Joshi, "understood, agreed with, and acknowledged the confidential and protected nature of the product development." (Rec. Doc. 20, at 4). In particular, Matrix alleges that Mr. Joshi owed a duty of loyalty to Matrix and had no ownership rights to any aspect of the Matrix Product. *Id.* Additionally, Matrix claims that "the confidential technology and properties of the Matrix Product were not matters of common knowledge" and that the technology and properties of the Matrix Product "cannot be ascertained from mere unintrusive visual inspection." *Id.* Instead, the "unique, innovative, and secret aspects of the Matrix Product exist in the inner workings and electronic structure and software and are discernable only upon intricate (and intrusive) examination solely by one knowledgeable of such specialized applications (and even then, the confidentiality of the software is protected)." *Id.* In sum, Matrix claims that the secrets were protected from disclosure by the outer enclosure of the product and that the complex technology could not have been reproduced by memory or experience. *Id.* at 4-5.

3

In March 2019, Matrix demonstrated the Matrix Product to Daikin's Regional Sales Manager. Matrix alleges that it did not disclose the confidential details and interior properties of the product, and "the Matrix demonstration was carried out in a way that ensured the confidentiality of the Matrix." (Rec. Doc. 20, at 5). Matrix claims that through its participation in the "protected and limited" demonstration, Daikin was "aware of Matrix's steadfast interest in preserving, protecting, and maintaining the confidentiality" of the product. *Id.* Matrix does not allege how Daikin became aware or how Matrix recognized that Daikin was aware of this interest.

On February 7, 2020, Mr. Joshi resigned from Matrix and accepted employment with Daikin. Matrix claims that, at the time of Mr. Joshi's resignation, Daikin "had not commercially offered, marketed or utilized anything similar to the Matrix Product or its technologies." (Rec. Doc. 20, at 6). After Mr. Joshi's hiring, Daikin began marketing and providing the "confidential technology contained in and unique to the Matrix Product to at least one of Matrix's key customers, all to the detriment of Matrix." *Id.*

On May 19, 2022 representatives of Matrix, Leif Wismar and Dario Cutura, attended a Daikin factory tour where Daikin presented a slideshow that included a way to control and add a hot gas reheat coil to any Daikin product, a method that Matrix alleges was based on the Matrix Product. On that same occasion, Matrix alleges that a Daiken representative told a Matrix employee that, "we took this from Leif." (Rec. Doc. 20, at 7). Matrix asserts that this statement is "prima facie acknowledgement of a taking and misappropriation of an asset" to the detriment of

4

Matrix, establishing that Daikin's conduct offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Id.*

In the instant motion, Daikin asserts that Matrix's Amended Complaint is an amendment in name only, and it still fails to allege any agreement between the parties or a single new action by Daikin. (Rec. Doc. 27-1, at 1-2). Additionally, Daikin asserts Matrix has failed to allege that Daikin owed any duty of confidentiality relating to a direct disclosure of information by Matrix to Daikin. *Id.* at 2.

## **LEGAL STANDARD**

To survive a Rule12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

5

## DISCUSSION

Matrix's only remaining claim is its LUTPA claim. In the instant motion, Daikin contends that Matrix's LUTPA claim in its amended complaint should be dismissed because (1) there is no allegation Matrix disclosed confidential information to Daikin under an express or implied agreement limiting use or disclosure and (2) there is no identification of conduct that violates LUTPA. (Rec. Doc. 27-1). In response, Matrix argues that it did state a LUTPA claim because it took reasonable measures to protect the confidential information and because Mr. Joshi used knowledge of the Matrix Product at Daikin.[1]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). A practice is unfair under LUTPA only when "the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (internal quotations omitted); *see also Monroe v. McDaniel*, 207 So. 3d 1172, 1180 (La. App. 5 Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical

---

[1] Matrix also argues that the Court should not allow Daikin to file a third Rule 12(b) motion. However, permitting successive, pre-answer motions comports with the Federal Rule of Civil Procedure Rule 1 to "secure the just, speedy, and inexpensive determination of every action and proceeding" and allow for resolution of the issue before the Court without undue delay. *See Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 686 (5th Cir. 2017) (finding no harm in allowing successive motion to dismiss).

conduct.'" (quoting C*heramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010))). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018)

To prevail on a LUTPA claim, a plaintiff must prove: (1) plaintiff's possession of knowledge or information that is not generally known; (2) plaintiff's communication of this knowledge or information to the defendant under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) defendant's use or disclosure of the knowledge or information to the injury of the plaintiff." *Ruby Slipper Cafe, LLC v. Belou*, 18-1548, 2019 WL 1254897, at *7 (E.D. La. Mar. 19, 2019) (internal citations omitted); *Bihm v. Deca Sys., Inc.*, 226 So. 3d 466, 482 (La. App. 1 Cir. 2017). Daikin contends that Matrix fails to plead the second and third elements under this test: that the parties had an express or implied agreement limiting Daikin's use or disclosure and that Daikin's conduct was unethical, unfair, unscrupulous, or immoral in violation of LUTPA.

First, the Court agrees that Matrix fails to plausibly allege either an express or implied agreement limiting Daikin's use or disclosure of information regarding the Matrix Product. Matrix did not add any additional facts in its amended complaint regarding such an agreement. Instead, Matrix added a conclusory claim: that Daikin was aware of Matrix's interest in preserving the confidentiality of the Matrix Product. (Rec. Doc. 20, at 5). Matrix does not explain how that awareness came about. Matrix also relies on an alleged statement by a Daikin representative that Daikin took

7

information from Matrix. *Id.* at 7. This statement does not imply that an agreement existed between Matrix and Daikin and does not allow this Court to infer that Daikin received information from Matrix with a restriction on how that information could be used or disclosed.

Second, the Court previously directed Matrix to include in its amended complaint detail as to "exactly what actions or conduct by Daikin could constitute egregious actions involving elements of fraud, misrepresentation deception, or other unethical conduct, which would violate LUTPA," instead of simply stating that Daikin appropriated information about the design and production of the product. (Rec. Doc. 19, at 11). However, instead of alleging any new facts, the Amended Complaint recites the same series of events: the Matrix Product entered the market in 2019, Mr. Joshi changed jobs in 2020 from Matrix to Daikin, and Daikin developed a competing product in 2022 by allegedly using Mr. Joshi's knowledge. (Rec. Doc. 20, at 5-7).

In its opposition, Matrix argues that it complied with the Court's directive by adding detail to its claims, particularly the statement that "We [Daikin] took this from Leif [Wismar]." (Rec. Doc. 28, at 12-14).[2] Matrix now claims that this statement represents a prima facie acknowledgement of a misappropriation of technology, constituting unethical, unfair, unscrupulous, and/or immoral competition. *Id.* at 14-15. However, without facts supporting that this taking was unfair, unethical,

---

[2] Matrix also emphasizes the obligations and actions of Mr. Joshi. However, as the Court previously noted, Matrix does not claim that Mr. Joshi's actions constitute LUTPA violations, so it is not necessary to determine whether Matrix stated a claim as to Mr. Joshi. (Rec. Doc. 19, at 10-11).

unscrupulous, or immoral, this statement does not allow the Court to reasonably make such inferences in order to survive a motion to dismiss.

Matrix also argues that unfair competition is alleged in its claims that Matrix has lost money and proprietary property, that Daikin specifically solicited its wrongful adaptation of the product to the injury of Matrix, and such unfair competition has caused damage to Matrix. *Id.* (citing Amended Complaint, Rec. Doc. 20, at 10-11). These additions to the Amended Complaint consist solely of conclusory allegations, rather than facts escalating Daikin's conduct from ordinary business practice to an egregious action prohibited by LUTPA. LUTPA targets a narrow range of "immoral, unethical, oppressive, unscrupulous, or substantially injurious" actions which "offend[ ] established public policy." *Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. App. 2 Cir. 1978). And "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (citation omitted). This allows businesses in Louisiana to be "free to pursue profit, even at the expense of competitors, so long as the means used are not egregious." *Id.* Matrix has not pled any specific conduct by Daikin that is immoral, unethical, oppressive, unscrupulous, or substantially injurious; instead the claims against Daikin demonstrate permissible business judgment in hiring and product development. Matrix has not described intent on the behalf of Daikin to deceive or harm Matrix's business and relationships with its clients, and Matrix cannot manufacture a LUTPA violation by adding conclusory claims to their complaint. *See*

9

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. 15-638, 2016 WL 5869787, at *12 (E.D. La. Oct. 7, 2016); *Target Const., Inc. v. Baker Pile Driving & Site Work, L.L.C.*, No. 12-1820, 2012 WL 5878855, at *4 (E.D. La. Nov. 20, 2012); *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 613 (E.D. La. 2015). Discovery is not permitted to develop a plausible claim. Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss **(Rec. Doc. 27)** is **GRANTED**. Plaintiff's LUTPA claim is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 27th day of March, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE